**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 17-61051-CIV-ALTONAGA/GOODMAN

ABS-CBN CORPORATION, *et al.,*

          Plaintiffs,

vs.

ABSCBN-TELESERYE.COM, *et al.*,

          Defendants.

_____/

# PLAINTIFFS' MOTION FOR FINAL DEFAULT JUDGMENT AGAINST DEFENDANTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Stephen M. Gaffigan, P.A.
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821

Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International Corporation (hereinafter collectively, "Plaintiffs" or "ABS-CBN"), hereby move this Honorable Court for an entry of final default judgment against Defendants, the Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A" hereto, (collectively "Defendants")[1] and in support thereof, submit the following Memorandum of Law.

## I.   INTRODUCTION

ABS-CBN initiated this action against Defendants through the filing of its Complaint for federal trademark counterfeiting and infringement (Count I), false designation of origin (Count II), cybersquatting (Count III), common law unfair competition (Count IV), common law trademark infringement (Count V), direct infringement of copyright (Count VI), and secondary infringement of copyright (Count VII). Defendants are in default, and the prerequisites for a default judgment have been met. ABS-CBN seeks default judgment finding Defendants liable on all counts of ABS-CBN's Complaint. ABS-CBN prays such judgment includes the entry of a permanent injunction and an award of statutory damages to Plaintiffs for Defendants' willful counterfeiting pursuant to 15 U.S.C. § 1117(c),[2] cybersquatting pursuant to 15 U.S.C. § 1117(d), and Defendants' willful copyright infringement pursuant to 15 U.S.C. § 504(c).[3] ABS-CBN also

---

[1] Plaintiffs have not included Defendant Number 7 (ebenta.info) in their request for relief as the parties have settled and a Consent Final Judgment has been entered, ECF No. [22]. This Motion refers to the remaining Defendants identified on Schedule "A" hereto (Declaration of Christine Ann Daley in Support of Plaintiffs' Motion for Final Default Judgment Against Defendants ("Daley Decl."), ¶ 1 n. 1, filed herewith.)

[2] Plaintiffs are moving for entry of Final Default Judgment against all Defendants and for statutory damages pursuant to 15 U.S.C. § 1117(c) to be awarded against all Defendants, jointly and severally. Each Defendant has actively engaged and participated in a concurrent, joint effort to infringe ABS-CBN's trademarks and liability has been established as to all Defendants as each Defendant has defaulted upon Plaintiffs' allegations. (See ECF No. [36].) Although Plaintiffs maintain Defendants are joint tortfeasors (see Compl. ¶¶ 58-59), because all Defendants have already defaulted and liability is established, Plaintiffs respectfully submit the entry of Final Default Judgment against all Defendants is appropriate, and that there would be no possibility of inconsistent liability. (See Notice of Joint Liability, ECF No. [38]).

[3] ABS-CBN is not requesting the Court award damages against all Defendants pursuant to 15 U.S.C. § 504(c) or 15 U.S.C. § 1117(d), and is not requesting the Court award these damages jointly and severally, therefore, there is no possibility of inconsistent liability. While all Defendants infringed ABS-CBN's copyrights, only Defendant Number 3, cinepinoy.lol, Defendant Number 4, cinezen.me, and Defendant Number 14, pinastvreplay.com, infringed registered copyrights. As no Defendant responded to the Complaint and ABS-CBN was unable to participate in discovery, it cannot demonstrate Defendants' actual revenue. Thus, ABS-CBN limits its request as to Defendant Numbers 2, 5-13, and 15-27 to the monetary judgment requested in Count I, to judgment on the claims, and the equitable relief requested in the

requests the Court cancel, or at ABS-CBN's election, transfer the domain names identified on Schedule "A" attached hereto (the "Subject Domain Names") to ABS-CBN to ensure the associated websites may no longer be used as a means for illegally distributing ABS-CBN's copyrighted works using infringements of ABS-CBN's trademarks.

## II.   STATEMENT OF FACTS

### A.   ABS-CBN's Rights.

ABS-CBN International is a California Corporation with its principal place of business located at 2001 Junipero Serra Boulevard, Suite 200, Daly City, California, 94014. ABS-CBN International is a subsidiary of ABS-CBN Corporation. (Declaration of Elisha J. Lawrence in Support of Plaintiffs' Application for Entry of TRO ["Lawrence Decl."] ¶ 2, ECF No. [6-1].)[4] ABS-CBN Corporation also owns ABS-CBN Film Productions, Inc. ABS-CBN Corporation and ABS-CBN Film Productions, Inc. are companies organized under the laws of the Republic of the Philippines ("the Philippines") with principal places of business in Quezon City, Philippines. (Id.) ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the movies identified in Exhibit 2, ECF No. [1-3], to the Compl. (Lawrence Decl. ¶ 4.) ABS-CBN Corporation is the owner of the unregistered copyrights in and to the movies and the TV shows identified in Exhibit 4, ECF No. [1-5], and paragraph 25 of the Compl. (Id.) Together, these works are referred to herein collectively as the "Copyrighted Works." ABS-CBN Corporation, ABS-CBN International, and ABS-CBN Film Productions, Inc. all share exclusive rights in and to the ABS-CBN Copyrighted Works. (Id.) All of ABS-CBN's Copyrighted Works are produced and initially aired through its broadcast facilities in the Philippines. (Lawrence Decl. ¶ 8; Compl. ¶ 29.) ABS-CBN is the largest media and entertainment company in the Philippines. (Lawrence Decl. ¶ 4.) ABS-CBN promotes and distributes such content on the Internet. (Compl. ¶¶ 1, 30; Lawrence Decl. ¶ 4.)

Plaintiff ABS-CBN International is the owner of all rights in and to the federally registered trademarks identified in Paragraph 5 of the Lawrence Declaration (the "ABS-CBN Registered Marks") as well as the common law trademark identified in Paragraph 6 (the

---

Complaint. Additionally, only Defendant Number 1, abscbn-teleserye.com, registered a cybersquatting domain name in violation of 15 U.S.C. § 1125(d), and thus ABS-CBN limits its request as to Defendant Number 1 to the monetary judgment requested in Count I and II, to judgment on the claims, and the equitable relief requested in the Complaint.

[4] On May 30, 2017, Plaintiff filed its Application for Entry of Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets (the "App. for TRO"), together with supporting exhibits and declarations, incorporated herein by reference, ECF No. [6].

"Common Law Mark") (collectively, the "ABS-CBN Marks"), which are used in connection with high quality distribution services of television programs and movies in the categories identified therein. (See Lawrence Decl. ¶¶ 5-6; see also U.S. Trademark Registrations of the ABS-CBN Registered Marks at issue, Ex. 1 to the Compl., ECF No [1-2].) ABS-CBN Corporation and ABS-CBN Film Productions, Inc. share exclusive rights in and to the ABS-CBN Marks with ABS-CBN International. (Lawrence Decl. ¶ 6.) Moreover, ABS-CBN Corporation and ABS-CBN Film Productions, Inc. are licensed to use and enforce the ABS-CBN Marks. (Id.) The ABS-CBN Marks are symbols of ABS-CBN's quality, reputation, and goodwill and have never been abandoned. (Lawrence Decl. ¶ 9.) Furthermore, ABS-CBN has extensively used, advertised, and promoted the ABS-CBN Marks in the United States in association with its services, and has carefully monitored and policed the use of the ABS-CBN Marks. (Id. at ¶ 6-9.) As a result of ABS-CBN's efforts, members of the consuming public readily identify services and audiovisual content bearing the ABS-CBN Marks as quality services and content sponsored and approved by ABS-CBN. (Id.) Accordingly, the ABS-CBN Marks have achieved secondary meaning as identifiers of high quality distribution services and audiovisual content.

### B. Defendants' Infringing Acts.

As alleged by ABS-CBN, admitted by default, and established by the evidence submitted herewith, Defendants operated and controlled the Internet websites operating under the Subject Domain Names,[5] and accompanying social media profiles. (See Exs. 3, 4, and 5 to the Compl., ECF Nos. [1-4], [1-5], and [1-6]; Daley Decl. re. App. for TRO, Ex. 1, ECF No. [6-3]; Declaration of Christine Daley in Support of Plaintiffs' Supplemental Brief to Add Domains to Plaintiffs' Application for Preliminary Injunction ["Daley Decl. re. Supp. Brief"], Ex. 2, ECF No [16-4].)[6] As such, Defendants are the active, conscious, and dominant force infringing the ABS-CBN Marks and facilitating access to pirate copies of ABS-CBN's Copyrighted Works. Defendants provided links on their respective websites to instant streams which performed ABS-

---

[5] Several of the Defendants use one of their respective Subject Domain Names to act as supporting domain name to direct traffic to other websites operating under another Subject Domain Name, from which users may view the Copyrighted Works. Accordingly, the web pages for the redirecting Subject Domain Name are included with the web pages to which that site redirects. (See Exhibits 3 and 4 to the Compl.; Lawrence Decl. ¶ 13 n.1.)

[6] On June 19, 2017, Plaintiff filed its Supplemental Brief to Add Domains to Plaintiffs' Application for Preliminary Injunction (the "Supp. Brief"), together with supporting exhibits and declarations, which are incorporated herein by reference, ECF No. [16].

CBN's Copyrighted Works. (See Exs. 3 and 4 to the Compl.; Daley Decl. re. TRO, Ex. 1; Daley Decl. re. Supp. Brief, Ex. 2.) When a user clicks on a link to one of ABS-CBN's copyrighted TV shows or movies, Defendants' websites streamed and performed the full-length version. (See Daley Decl. re. App. for TRO ¶ 2, ECF No. [5-2], and Ex. 1 thereto; Daley Decl. re. Supp. Brief ¶ 6 and Ex. 2 thereto; see also Exs. 3 and 4 to the Compl.) This included, but was not limited to, the ABS-CBN Copyrighted Works identified in Ex. 2 to the Compl. and paragraph 25 thereto.

As admitted by Defendants through default, at all times relevant, Defendants have had full knowledge of ABS-CBN's ownership of the ABS-CBN Marks and Copyrighted Works, including its exclusive rights to use and license such intellectual property and associated goodwill. (Compl. ¶ 48, 65, 84, 98, 109, 127, 137.) Defendants do not have or ever had the right or authority to use the ABS-CBN Marks for any purpose. (See Lawrence Decl. ¶ 12; Declaration of Elisha J. Lawrence in Support of Supp. Brief ["Lawrence Decl. re. Supp. Brief"] ¶¶ 5-6, ECF No. [16-1]) Despite their known lack of authority to do so, Defendants engaged in the activity of promoting and otherwise advertising, offering for distribution, and distributing ABS-CBN's Copyrighted Works under the ABS-CBN Marks on the Internet websites operating under the Subject Domain Names. (Compl. ¶¶ 1, 3-5, 36-45, 46-73, 78-79, 86-89, 94-95, 99-101, 104-108, 109, 116-123, 127; see also Lawrence Decl., ¶¶ 12-15; Lawrence Decl. re. Supp. Brief. ¶¶ 5-6; Exs. 3 and 4 to the Compl.; Daley Decl. re. App. for TRO, Ex. 1; ECF No. [6-3]; Daley Decl. re. Supp. Brief, Ex. 2, ECF No [16-4]).

Defendants streamed the Copyrighted Works which were performed through a viewer/player window within their respective websites. (Daley Decl. re. App. for TRO ¶ 2; Daley Decl. re. Supp. Brief ¶ 6.) The Copyrighted Works were not uploaded by the websites' users because the websites appeared to be closed and did not permit users to alter the content. (Id.) Further, Defendants profited from the advertising revenue derived by driving users to their websites in order to access and view the pirated copies of ABS-CBN's Copyrighted Works. (Daley Decl. re. App. for TRO ¶¶ 4-5; Daley Decl. re. Supp. Brief ¶ 8; Lawrence Decl. ¶ 16.) The large inventory of popular entertainment content available on Defendants' websites, including full-length copies of ABS-CBN's Copyrighted Works, were designed to attract users to the infringing content and, thus, increase Defendants' profits from the advertisers who paid Defendants based on the number of views that the advertising received. (Daley Decl. re. App. for TRO ¶¶ 4-5; Daley Decl. re. Supp. Brief ¶ 8; Lawrence Decl. ¶ 16.) The infringement-driven traffic increased the volume of online advertising impressions and transactions, and thereby

increased revenues from the advertising services used, and enabled Defendants to charge advertisers higher rates. (Daley Decl. re. App. for TRO ¶¶ 4-5.) As part of ABS-CBN's ongoing investigation regarding the infringement of its intellectual property, ABS-CBN's counsel investigated the advertising accounts used by Defendants. (See Daley Decl. re. App. for TRO ¶ 5.) By inspecting the Hyper Text Markup Language ("html") Source Code for the Internet websites operating under the Subject Domain Names, ABS-CBN's counsel specifically located and identified many of the advertising revenue accounts of the Defendants as identified on Schedule "B" hereto.  (Id. and Comp. Ex. 3 thereto, ECF No. [6-5].) Defendants used these accounts to generate income on their websites operating under the Subject Domain Names. (Id.)

ABS-CBN's representative, Elisha J. Lawrence, confirmed Defendants are not and were never entitled to use the ABS-CBN Marks, broadcast or otherwise distribute and/or perform the ABS-CBN Copyrighted Works offered for distribution under those Marks. (See Lawrence Decl. ¶¶ 12-15; Lawrence Decl. re. Supp. Brief. ¶¶ 5-6.)

### C.  Procedural Background.

On May 26, 2017, ABS-CBN filed its Complaint against Defendants, ECF No. [1]. On May 30, 2017, ABS-CBN filed its App. for TRO, ECF No. [6]. On June 19, 2017, Plaintiff filed its Supp. Brief, ECF No. [16]. On June 2, 2017, this Court granted Plaintiffs' App. for TRO, ECF No. [9], entered on docket June 5, 2017, and subsequently converted the TRO into a preliminary injunction on June 22, 2017, ECF No. [20]. The TRO and Preliminary Injunction required, *inter alia*, certain advertising services, networks, and/or platforms (the "advertising services") associated with Defendants to identify and restrain all funds and to divert to a holding account for the trust of the Court all funds currently in, or which during the pendency of the Order come in to, Defendants' associated payment accounts, including all accounts tied to, associated with, or that transmit funds into Defendants' respective payment accounts, and divert those funds to a holding account for the trust of the Court. (See Daley Decl. ¶ 4.) Subsequently, ABS-CBN's counsel received notice from certain advertising services that they complied with the requirements of the Court's Order. (Id.)

On August 9, 2017 ABS-CBN filed its Motion for Order Authorizing Alternate Service of Process, ECF No. [23],[7] which the Court granted on August 10, 2017, ECF No. [23]. Pursuant to the Court's Order Granting Motion for Alternate Service, ABS-CBN served each Defendant

---

[7] Plaintiffs' Motion for Alternate Service, and the supporting declarations and exhibits attached thereto, ECF No. [23], are incorporated herein by reference.

with a copy of its respective Summons and the Complaint via electronic mail and publication service on August 17, 2017. See ECF Nos. [32], [33], [34], Proofs of Service on file with the Court.

The time for Defendants to respond to the Complaint has expired. (Daley Decl. ¶ 7.) Defendants have not been granted any extension of time, nor have they served or filed any response. (Id. at ¶ 8.) To ABS-CBN's knowledge, Defendants are not infants or incompetent persons and the Servicemembers Civil Relief Act does not apply. (See id. at ¶¶ 9-10.) On September 21 2017, ABS-CBN filed its request for Clerk's Entry of Default against Defendants, ECF No. [35]. (Daley Decl. ¶ 11.) The Clerk entered default against each Defendant on September 22, 2017, ECF No. [36]. (Id.) ABS-CBN moves the Court to grant Final Default Judgment against Defendants in compliance with the Court's December 15, 2017 Order, ECF No. [37].

## III.   ARGUMENT

### A.   Default Judgment Should Be Entered Against Defendants.

This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101 *et seq.*, 15 U.S.C. § § 1114 and 1125(a), and 28 U.S.C. §§ 1331, 1338(a) & (b). (Compl. ¶¶ 6-10.) Personal jurisdiction over Defendants and venue in this Judicial District are proper under 28 U.S.C. § 1391 as Defendants directed business activities toward consumers within this District and caused harm to ABS-CBN's business through the fully accessible Internet websites operating under the Subject Domain Names and because Defendants are non-resident aliens. (Id. at ¶¶ 9, 10.)

#### 1.   Default Judgment is Proper.

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. By such a default, all of ABS-CBN's well-plead allegations in the Complaint are deemed admitted. See Petmed Express, Inc. v. Medpets.com, 336 F. Supp. 2d 1213, 1217 (S.D. Fla. 2004) (citing Buchanan v. Bowman, 820 F.2d 359 (11th Cir. 1987)). Accordingly, the well-pled factual allegations of ABS-CBN's Complaint will be taken as true. (See id.) In this case, the Complaint, pleadings, and the declarations filed in support of ABS-CBN's Motion of Entry of Final Default Judgment clearly demonstrate that default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

#### 2.   Factual Allegations Establish Defendant's Liability.

Title 15 U.S.C. § 1114 provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or

colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." In order to prevail on its trademark infringement claim under Section 32 of the Lanham Act, ABS-CBN must demonstrate: (1) it had prior rights to the trademarks at issue; and (2) Defendants have adopted a mark or name that was the same, or confusingly similar to ABS-CBN's trademarks, such that consumers were likely to confuse the two. Planetary Motion, Inc. v. Techsplosion, Inc., 261 F.3d 1188, 1193 (11th Cir. 2001) (citing Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355, 360 (11th Cir. 1997)).[8]

To prevail on a false designation of origin claim under Section 43(a) of the Lanham Act, ABS-CBN must prove that Defendants used in commerce, in connection with any goods or services, any word, term, name, symbol or device, or any combination thereof, or any false designation of origin, which is likely to deceive as to the affiliation, connection, or association of Defendants with ABS-CBN, or as to the origin, sponsorship, or approval, of Defendants' services by ABS-CBN. 15 U.S.C. § 1125(a)(1). As with trademark infringement claims, the test for liability for false designation of origin under Section 43(a) is also "whether the public is likely to be deceived or confused by the similarity of the marks at issue." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 780, 112 S.Ct. 2753, 2763 (1992).

ABS-CBN's Complaint also sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA") 15 U.S.C. § 1125(d). To prevail under 15 U.S.C. § 1125(d), ABS-CBN must demonstrate that "(1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." Bavaro Palace, S.A. v. Vacation Tours, Inc., 203 Fed. Appx. 252, 256, 2006 WL 2847233, at *3 (11th Cir. 2006). See 15 U.S.C. § 1125(d).

Whether a defendant's use of the plaintiff's trademarks created a likelihood of confusion between a plaintiff's and defendant's services is also the determining factor in the analysis of unfair competition under the common law of Florida. Rolex Watch U.S.A., Inc. v. Forrester, No. 83–8381–Civ-Paine, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1987) ("The appropriate test for determining whether there is a likelihood of confusion, and thus trademark infringement, false

---

[8] The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under § 32(a) of the Lanham Act, as discussed *supra*. PetMed Express, Inc., 336 F. Supp. 2d at 1217-18.

designation of origin, and unfair competition under the common law of Florida, is set forth in John H. Harland, Inc. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983).")

ABS-CBN's Complaint also sets forth a cause of action for direct infringement of copyright pursuant to the Copyright Act, 17 U.S.C. §§ 106(1), (3) and (4). ABS-CBN must "satisfy two requirements to present a prima facie case of direct copyright infringement: (1) they must show ownership of the allegedly infringed material, and (2) they must demonstrate that the alleged infringers violated at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004, 1013 (9th Cir. 2001). See also Disney Enters. v. Hotfile Corp., Case No. 11-20427-CIV-Williams, 2013 U.S. Dist. LEXIS 172339, at *94 (S.D. Fla. 2013).

Finally, to prevail on a claim of contributory infringement of copyright, a plaintiff must establish: (1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement. See Tiffany (NJ), LLC v. Liu Dongping, 2010 U.S. Dist. LEXIS 121232, 14-17 (S.D. Fla. Oct. 29, 2010) (citing MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005)).

The well-pled factual allegations of ABS-CBN's Complaint, including specifically those pled in Paragraphs 3-5, 36-45, 46-73, 78-79, 86-89, 94-95, 99-101, 104-108, 116-123, ECF No. [1], properly allege the elements for each of the above claims. Moreover, the factual allegations in ABS-CBN's Complaint, substantiated by evidence submitted herewith, conclusively establish each Defendant's liability under each claim asserted in the Complaint. Accordingly, Default Judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure should be entered against Defendants.

### B.   Plaintiffs' Requested Relief Should be Granted.

### 1.   Entry of Permanent Injunction is Appropriate.

Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law. 15 U.S.C. § 1116(a). "[I]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." Burger King Corp. v. Agad, 911 F. Supp. 1499, 1509-10 (S.D. Fla. 1995) (citing Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir. 1988)). Even in a default judgment setting, injunctive relief is available.

See, e.g., Petmed Express, Inc. v. Medpets.com, 336 F. Supp. 2d 1213, 1222-23 (S.D. Fla. 2004). Defendants' failure to respond or otherwise appear in this action makes it difficult for ABS-CBN to prevent further infringement absent an injunction. See Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief.") Pursuant to 15 U.S.C. § 1116, this Court should permanently enjoin Defendants from continuing to infringe any of ABS-CBN's intellectual property rights.

Permanent injunctive relief is appropriate where ABS-CBN demonstrates (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardships favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest. eBay Inc., v. MercExchange, LLC, 547 U.S. 388, 392-93, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). As demonstrated herein, ABS-CBN has clearly carried its burden on each of the four factors, warranting permanent injunctive relief, because Defendants have unlawfully used ABS-CBN's goodwill to make a profit. Accordingly, a permanent injunction against Defendants' counterfeiting and infringing activities is appropriate and necessary.

Defendants' actions merit permanent injunctive relief, not only to protect ABS-CBN's reputation, but also to protect consumers from being deceived as to the quality and source of services offered and advertised under ABS-CBN's trademarks. The facts alleged in ABS-CBN's Complaint, substantiated by the evidence submitted herewith, show Defendants infringed and induced others to infringe the ABS-CBN Marks by using them to advertise and promote illegal distribution services of ABS-CBN's Copyrighted Works.

ABS-CBN will continue to suffer irreparable injury if Defendants' infringing activities are not permanently enjoined. (Lawrence Decl. ¶¶ 17-24.) In trademark cases, "a sufficiently strong showing of likelihood of confusion ... may by itself constitute a showing of a substantial threat of irreparable harm." McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998). See also Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 986 (11th Cir.1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage LS & Co.'s business reputation and might decrease its legitimate sales.") Furthermore, "harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer. In the context of copyright infringement cases, the harm to the plaintiff's property interest

has often been characterized as irreparable in light of possible market confusion." See Salinger v. Colting, 607 F.3d 68, 77 and n.6, 77-83 (2nd Cir. 2010); Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 96-97 (2d Cir. 2002); see WPIX, Inc. v. ivi, Inc., 765 F. Supp. 2d 594, 617-621 (S.D.N.Y. 2011) (granting injunction based on streaming over Internet of copyrighted TV programming). In any event, ABS-CBN's Complaint alleges Defendants' unlawful actions have caused ABS-CBN irreparable injury, and will continue to do so if Defendants are not permanently enjoined. (Compl. ¶¶ 75, 82, 84, 90, 92, 91, 102, and 111.) Defendants have defaulted upon ABS-CBN's factual allegations in that respect.

It can hardly be said Defendants face hardship in refraining from willful infringement of ABS-CBN's trademarks and copyrights, whereas ABS-CBN faces hardship from loss of sales and inability to control its reputation. Defendants have no cognizable hardship, as they will be prohibited from promoting and offering distribution services of ABS-CBN's Copyrighted Works under ABS-CBN's Marks and use of the Marks, which are illegal acts to begin with. ABS-CBN has suffered irreparable harm while "[i]t is axiomatic that an infringer of copyright cannot complain about the loss of ability to offer its infringing product." WPIX, 765 F. Supp. 2d at 603; see, e.g., EyePartner, Inc. v. Kor Media Group LLC, 2013 U.S. Dist. LEXIS 98370, at *16 (and cases cited therein). Finally, the public has an interest in the issuance of a permanent injunction against Defendants in order to prevent consumers from being misled by Defendants' services. See Nike, Inc. v. Leslie, 227 U.S.P.Q. 574, 575 (1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior."). The public interest is protected by issuing an injunction because ABS-CBN loses valuable incentives to continue to create programming if it continues to be deprived of (1) control over its Copyrighted Works, (2) how and where the Copyrighted Works get distributed, including Internet retransmissions through negotiated licenses and their portals, and (3) potential revenue sources. Protecting ABS-CBN's rights is consistent with, if not equivalent to, promoting the public interest. See Salinger, 607 F.3d at 82; WPIX, 765 F. Supp. 2d at 621; CBS Broad., Inc. v. EchoStar Communs. Corp., 265 F.3d 1193, 1198 (11th Cir. 2001) ("the public interest lies with protecting the rights of copyright owners."); C.B. Fleet Co. v. Unico Holdings, Inc., 510 F. Supp. 2d 1078, 1084 (S.D. Fla. 2007) ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works."). The permanent injunction will prevent consumer confusion and deception in the marketplace, and will protect ABS-CBN's property interest in its

Marks and Copyrighted Works, which are the touchstones of trademark and copyright law.

Furthermore, as admitted by Defendants through default, (i) the Subject Domain Names are essential components of Defendants' counterfeiting and infringing activities; and (ii) the domain names are the means by which Defendants further their counterfeiting and infringing schemes and cause harm to ABS-CBN. (Compl. ¶ 45.) In order to effectuate the injunction as a practical matter, the Subject Domain Names should be ordered transferred to ABS-CBN's control by Defendants, their Registrars, and/or Registries. Without transfer of the Subject Domain Names, Defendants will be free to continue infringing ABS-CBN's intellectual property with impunity and continue to benefit from Internet traffic built through the unlawful use of the ABS-CBN's intellectual property.

The Court's powers of equity are sufficiently broad to compel measures necessary to enforce an injunction against infringement. See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 15 , 91 S. Ct. 1267, 1276 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for. . . the essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case."); United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid whole."). District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name. See 15 U.S.C. §§ 1125(d)(1)(C), (d)(2). However, the remedy is by no means limited to that context. See, e.g., Philip Morris USA v. Otamedia Ltd., 331 F. Supp. 2d 228, 230-31 (S.D.N.Y. 2004) (Yesmoke.com domain name transferred to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. § 1125 "neither states nor implies that an in rem action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace."); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (defendants ordered to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. § 1116(a)). This Court and others have not hesitated to order the transfer of domain names when faced with factual scenarios similar to the one herein.[9]

---

[9] See e.g., Chanel, Inc. v. 4sreplicachanel.com, Case No. 17-cv-61838-CMA (S.D. Fla. Nov. 9, 2017) (awarding transfer of domain name at issue as part of grants of permanent injunction); Tiffany (NJ) LLC v. tiffanyloveyou.com, Case No. 17-cv-60594-CMA (S.D. Fla. June 8, 2017) (same). See also Under Armour, Inc. v. 51nfljersey.com, No. 13-62809-CIV, 2014 WL 1652044,

Defendants have created an Internet-based infringement scheme and are profiting from the deliberate misappropriation of ABS-CBN's rights. Accordingly, the Court should eliminate the means by which Defendants conduct their unlawful activities by transferring the Subject Domain Names to ABS-CBN, where they may be disabled from further use as a platform for the illegal distribution of ABS-CBN's Copyrighted Works under counterfeits of ABS-CBN's trademarks.

## 2.    Damages as to Count I for Trademark Counterfeiting and Infringement.[10]

In a case involving the use of counterfeit marks in connection with a sale, offering for sale, or distribution of services, 15 U.S.C. § 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good or service. 15 U.S.C. § 1117(c)(1). In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good or service. 15 U.S.C. § 1117(c)(2). Pursuant to 15 U.S.C. § 1117(c), ABS-CBN elects to recover an award of statutory damages as to Count I of the Complaint.

The Court has wide discretion to set an amount of statutory damages. Petmed Express, Inc., 336 F. Supp. 2d at 1219 (citing Cable/Home Commc'n Corp. v. Network Prod., Inc., 902 F.2d 829, 852 (11th Cir. 1990). An award of statutory damages is an appropriate remedy, despite a plaintiff's inability to provide actual damages caused by a defendant's infringement. Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent."). Congress enacted a statutory damages remedy in trademark counterfeiting cases because evidence of a defendant's profits in such cases is almost impossible to ascertain. See, e.g., S. REP. NO. 104-177, pt. V(7) (1995) (discussing purposes of Lanham Act statutory damages.) See also Petmed Express, Inc., 336 F. Supp. 2d at 1220 (statutory damages are "especially appropriate in

---

at *7 (S.D. Fla. Apr. 23, 2014) (same); Chanel, Inc. v. 7perfecthandbags.com, No. 12-22057-CIV, 2014 WL 352197 (S.D. Fla. Jan. 31, 2014) (same); ABS-CBN Corporation v. Movieonline.io, Case No. 17-cv-61803-BB (S.D. Fla. Nov. 29, 2017, entered on docket Nov. 30, 2017) (same).

[10] ABS-CBN's Complaint also sets forth causes of action for false designation of origin pursuant to § 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) (Count II), under Florida's common law of unfair competition (Count IV), and under Florida's common law of trademark infringement (Count V). As to these Counts, the allowed scope of monetary damages is encompassed in 15 U.S.C. § 1117(c). Accordingly, judgment on these Counts should be limited to the amount awarded pursuant to Count I and entry of the requested equitable relief.

default judgment cases due to infringer nondisclosure"). This case is no exception.

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. Petmed Express, Inc., 336 F. Supp. 2d at 1220. A defendant has acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. See Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. See Petmed Express, Inc., 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true)). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

The ABS-CBN Marks are renowned worldwide as identifiers of high quality broadcast distribution services, and Defendants clearly wrongfully used those marks for the purpose of trading upon ABS-CBN's goodwill. Indeed, in a case of clear-cut copying such as this, it is appropriate to infer that Defendants intended to cause confusion and benefit from ABS-CBN's reputation, to ABS-CBN's detriment. See Petmed Express, Inc., 336 F. Supp. 2d at 1220 (court infers intent to confuse consumers into believing affiliation from Defendant's use of such a mark that was confusingly similar). Moreover, in this District, it has been held that when an alleged infringer adopts a mark "with the intent of obtaining benefit from the plaintiff's business reputation, 'this fact alone may be sufficient to justify the inference that there is confusing similarity.'" Turner Greenberg Assocs., 320 F. Supp. 2d 1317, 1333 (S.D. Fla. 2004) (citing Carnival Corp. v. Seaescape Casino Cruises, Inc., 74 F. Supp. 2d 1261, 1268 (S.D. Fla. 1999)).

The evidence establishes Defendants intentionally copied the ABS-CBN Marks for the purpose of deriving the benefit of ABS-CBN's world-famous reputation. Defendants defaulted on ABS-CBN's allegations of willfulness. (Compl. ¶¶ 1, 5, 61, 109, 126.) See Arista Records, Inc., 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the Defendant's default.) As such, this Court should award a significant amount of statutory damages under the Lanham Act to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The evidence in this case demonstrates Defendants promoted, offered, advertised, at least one (1) type of service – content distribution services – using marks which were, in fact, infringements of, at least, one of the ABS-CBN Marks protected by two (2) Federal trademark registrations for such services. (Compl. ¶¶ 3-5, 36-45, 46-73, 78-79, 86-89, 94-95, 99-101, 104-108, 116-123; see generally Exs. 3, 4, and 5 to the Compl., Ex. 1 to the Daley Decl. re. App. for TRO, and Ex. 2 to the Daley Decl. re. Supp. Brief, relevant web captures of Defendants' websites operating under their

Subject Domain Names, showing examples of their infringements of the ABS-CBN Marks.)  Based on the above considerations, Plaintiffs respectfully suggest the Court could start with a baseline of the statutory award of $100,000.00, treble it to reflect Defendant's willfulness, and then double the product for the purpose of deterrence. The result would be $600,000.00 per ABS-CBN Mark infringed (2) per type of services offered (1), for a total award amount of $1,200,000.00 in statutory damages for trademark infringement and counterfeiting.

Plaintiffs' requested damage amount is at the lower end of Plaintiffs' requested damages for trademark infringement and the range prescribed under 15 U.S.C. § 1117(c)(2) [11] and should be sufficient to deter Defendant and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendant, all stated goals of 15 U.S.C. § 1117(c). Joint Statement of Trademark Counterfeiting Legislation, H.R.J. Res. 648, 98th Cong., 2nd Sess., 130 Cong.Rec. H12076, H12083; Petmed Express, Inc., 336 F. Supp. 2d at 1222 ("statutory damages under § 1117(c) are intended not just for compensation for losses, but also to punish and deter wrongful conduct."). Courts in this District has granted statutory damages under the Lanham Act in a manner similar to Plaintiffs' request herein.[12]

### 3. Damages as to Count III for Cybersquatting Against Defendant Number 1, abscbn-teleserye.com

ABS-CBN's Complaint further sets forth a cause of action for cybersquatting pursuant to the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). As admitted by default, and established by the evidence submitted herewith, Defendant Number 1, abscbn-teleserye.com ("Defendant Number 1") has acted with the bad faith intent to profit from the ABS-CBN Mark Number 2,334,131 and the goodwill associated therewith by registering its Subject Domain Name "abscbn-teleserye.com," which is identical, confusingly similar to, or dilutive of ABS-CBN Mark Number 2,334,131. (Compl. ¶¶ 63-68, 100-105.) The abscbn-teleserye.com domain name incorporates the ABS-CBN Mark Number 2,334,131 in its entirety surrounded by the descriptive "teleserye" term, rendering the domain name nearly identical to

---

[11] In its Complaint, ABS-CBN requested that "Plaintiffs be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act." (ECF No. [1] at p. 34.) ABS-CBN's requested damages are well below the damages prayed for in the Complaint.

[12] See; ABS-CBN Corporation v. Pinoy-ako.info, Case No. 14-cv-61613-BB (S.D. Fla. Feb. 12, 2015) (awarding $1,200,000.00 per trademark infringed (2) per type of services offered (1), for a total award amount of $2,400,000.00); ABS-CBN Corporation, et al., v. Phnoy.com, Case No. 14-cv-61710-JIC (S.D. Fla. Dec. 16, 2014) (awarding $1,200,000.00 per trademark infringed (4) per type of services offered (1), resulting in a total award of $4,800,000.00).

ABS-CBN Mark Number 2,334,131. Even minor variations to a plaintiff's mark in a domain name can be confusingly similar. See Victoria's Cyber Secret Ltd. P'ship v. V Secret Catalogue, Inc., 161 F. Supp. 2d 1339, 1351 (S.D. Fla. 2001) ("taking of an identical copy of another's famous and distinctive trademark for use as a domain name creates a presumption of confusion."); DaimlerChrysler v. The Net Inc., 388 F.3d 201, 205-06 (6th Cir. 2004) ("Courts generally have held that a domain name that incorporates a trademark is 'confusingly similar to' that mark if 'consumers might think that [the domain name] is used, approved, or permitted' by the mark holder."). Furthermore, it is indisputable that the ABS-CBN Mark Number 2,334,131 is famous and distinctive. ABS-CBN's genuine services are among the best-selling entertainment services in the Filipino community, and the ABS-CBN Marks enjoy widespread recognition and are prominent in the minds of the consuming public. (See Lawrence Decl. ¶¶ 9-10.)

As to the issue of bad faith, the ACPA lists nine factors in determining whether a domain name is used in "bad faith" with an intent to profit from a mark in registering or using the mark in a domain name. See 15 U.S.C. § 1125(d)(1)(B)(i); Taverna Opa Trademark Corp., 2010 WL 1838384, at *2.  These factors are not meant to be exclusive and the Court may consider the context of the matter in its determination of bad faith.  See Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1347. Examining the bad faith factors compels the conclusion that Defendants' registration and use of the abscbn-teleserye.com domain name violates 15 U.S.C. § 1125(d).

The first and third factors, § 1125(d)(1)(B)(I) and (III), are clearly present inasmuch as Defendant Number 1 has no rights in the ABS-CBN Marks, and Defendant Number 1 has never used the ABS-CBN Marks in connection with a bona fide offering of goods or services. Additionally, the fourth, fifth, and ninth factors, § 1125(d)(1)(B)(IV), (V) and (IX), weigh in ABS-CBN's favor. As discussed above, Defendant Number 1 has clearly intentionally incorporated the ABS-CBN Mark Number 2,334,131 in its abscbn-teleserye.com domain name to divert consumers looking for ABS-CBN's Internet website to its Internet website for commercial gain. Such consumers are likely to be confused as to the source and sponsorship of Defendant Number 1's Internet website and mistakenly believe the website is endorsed by and/or affiliated with ABS-CBN. Clearly, Defendant Number 1's registration of its abscbn-teleserye.com domain name, in order to promote and/or offer for sale infringing services and pirated content, knowing the domain name is identical or confusingly similar to ABS-CBN's indisputably famous and distinctive mark ensures a likelihood of confusion among consumers.

See House Judiciary Committee Report on H.R. 3028, H.R. Rep. No. 106-412 p. 13 (October 25, 1999) ("The more distinctive or famous a mark has become, the more likely the owner of that mark is deserving of the relief available under this act.").

Upon a finding of liability, the ACPA empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(c); Victoria's Cyber Secret Ltd. P'ship, 161 F. Supp. 2d at 1356. Accordingly, ABS-CBN is entitled to the transfer and ownership of the abscbn-teleserye.com domain name because it is confusingly similar to the ABS-CBN Mark Number 2,334,131. See id. at 663. Additionally, ABS-CBN may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just. 15 U.S.C. § 1117(d). ABS-CBN elects statutory damages and submits that in view of Defendant Number 1's intentional, wrongful behavior, an award in the amount of $10,000.00 it would be just. See Taverna Opa Trademark Corp., 2010 WL 1838384, at *3 (awarding $10,000.00 in statutory damages for the infringing domain name at issue); Tiffany (NJ) LLC v. tiffanyloveyou.com, Case No. 17-cv-60594-CMA (S.D. Fla. June 8, 2017) (awarding $10,000.00 in statutory damages for each infringing domain name at issue).

### 4. Plaintiffs' Damages Against Defendant Number 3, cinepinoy.lol, Defendant Number 4, cinezen.me, and Defendant Number 14, pinastvreplay.com as to Count VI for Direct Infringement of Copyright.

ABS-CBN's Complaint sets forth a cause of action for direct infringement of copyright under 17 U.S.C. § 504 and requests statutory damages thereunder. Defendants have defaulted on the well-pled allegations of Count IV. As Defendants failed to respond to Plaintiffs' copyright infringement claim and participate in discovery, Plaintiffs cannot demonstrate Defendants' actual revenue. Accordingly, Plaintiffs elect to be awarded statutory damages within the provisions of Section 504(c) of the Copyright Act, 17 U.S.C. § 504(c) to reflect the willful nature of the Defendants' infringement, instead of an award of actual damages or profits.

Title 17 U.S.C. § 504(c) concerning statutory damages provides that a copyright owner may elect an award of statutory damages at any time before final judgment is rendered, "to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a

sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). In addition, if the Court finds that Defendants' copyright infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). Pursuant to 17 U.S.C. § 504(c), Plaintiffs seek to recover an award of statutory damages as to Count IV of the Complaint.

The Court has wide discretion to set an amount of statutory damages. Tiffany (NJ), LLC v. Liu Dongping, 2010 U.S. Dist. LEXIS 121232, Case No. 10-61214-CIV-SEITZ (S.D. Fla. Oct. 29, 2010). Indeed, an award of statutory damages is appropriate, because statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by the Defendants. Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984). "A rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes." F. W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952).

A defendant's intent can be of probative value for establishing willfulness, triggering an enhanced statutory award. Cable/Home Comm'n Corp. v. Network Prods, Inc., 902 F.2d 829, 851 (11th Cir. 1990). A defendant is deemed to have acted willfully where "the infringer acted with actual knowledge or reckless disregard" to a plaintiff's intellectual property rights. See Arista Records, Inc. v. Beker Enter., Inc., 298 F. Supp. 2d 1310, 1312 (S.D. Fla. 2003). Willfulness may also be inferred from the defendant's default. See Petmed Express, Inc., 336 F. Supp. 2d at 1217 (upon default, well plead allegations taken as true)). In either case, a defendant is deemed to have the requisite knowledge that its acts constitute an infringement.

Plaintiffs are renowned producers of quality audiovisual entertainment content. The evidence establishes Defendants willfully infringed Plaintiffs' copyrighted programming in order to attract visitors to their websites, so that they may in turn profit from these visitors' page views in the form of advertising revenue. In any event, Defendants have defaulted on Plaintiffs' allegations of willfulness. (Compl. ¶ 1, 5, 61, 109, 126; Ex. 4 to the Complaint, ECF No. [1-5] at pp. 11-21; 66-67.) See Arista Records, Inc., 298 F. Supp. 2d at 1313 (finding a Court may infer willfulness from the defendants' default.) As such, this Court should award a significant amount of statutory damages under the

17

Copyright Act to ensure Defendants will not continue their willful infringing activities.

ABS-CBN requests the Court award them $30,000.00 per infringed registered work per Defendant, as outlined in Schedule "C" hereto. The requested amount is the highest for non-willful infringement, despite Defendants' default on allegations of willfulness, and this amount per work infringed has been previously awarded by Courts in this district.[13]

### a. Recovery of Statutory Damages Under Both the Lanham Act and the Copyright Act is Appropriate

Recovering under both the Lanham Act and the Copyright Act is appropriate in the instant case. Defendants herein willfully committed two wrongs, copyright infringement and trademark infringement, and ABS-CBN has proven violations of both statutes. "A plaintiff is entitled to a separate award of statutory damages under both the Copyright Act and the Lanham Act when the defendant simultaneously infringes a copyright and trademark." Microsoft Corp. v. Online Datalink Computer, Inc. 2008 WL 1995209 *3 (S.D. Cal. 2008) (citing Nintendo of America, Inc. v. Dragon Pacific Int'l, 40 F.3d 1007, 1011 (9th Cir. 1994)). See also, Microsoft Corp. v. Nop, 549 F. Supp .2d 1233, 1238 -1239 (E.D. Cal. 2008) ("plaintiff may be awarded statutory damages under both the Copyright Act and the Lanham Act where the defendant's act simultaneously infringed the plaintiff's copyright and its trademark."); Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 881 -882 (S.D. Ohio 2007) ("successful plaintiff is entitled to recover a separate award of statutory damages under both the Copyright Act and the Lanham Act when a defendant has infringed both its trademarks and copyrights, even when by a single act."); Microsoft Corp. v. Black Cat Computer Wholesale, Inc., 269 F. Supp. 2d 118, 123-24 (W.D.N.Y. 2002) (a successful plaintiff in a combined copyright and trademark infringement action is entitled to separate awards of statutory damages under both the Copyright Act and the Lanham Act when a defendant has infringed both the owner's trademarks and copyrights."); Microsoft Corp. v. Tierra Computer, Inc., 184 F. Supp. 2d 1329, 1331 (N.D. Ga. 2001) ("This Court holds that the Plaintiff's request for statutory damages under both acts is not an impermissible double recovery."); Microsoft Corp. v. Compusource Distributors, Inc., 115 F. Supp. 2d 800, 811 (E.D. Mich. 2000) ("In so far as the Lanham Act and Copyright Act provide separate remedies for distinct injuries, Microsoft may seek damages under each Act.").

---

[13] See ABS-CBN Corporation v. Movieonline.io, Case No. 17-cv-61803-BB (S.D. Fla. Nov. 29, 2017, entered on docket Nov. 30, 2017); ABS-CBN Corporation v. Pinoy-ako.info, Case No. 14-cv-61613-BB (S.D. Fla. Feb. 12, 2015); ABS-CBN Corporation v. Cinesilip.net, Case No. 17-cv-60650-RNS (S.D. Fla. Jul. 10, 2017, entered on docket Jul. 11, 2017).

The issue of whether an award of statutory damages under both the Lanham and Copyright Acts is a double recovery was addressed in <u>Microsoft Corp. v. Tierra Computer, Inc.</u>, 184 F. Supp. 2d 1329, 1331 (N.D. Ga. 2001); Microsoft sought statutory damages under both the Lanham Act and the Copyright Act alleging the Defendants continued selling counterfeit software and infringing trademarks in violation of a stipulated permanent injunction. The Court held that "the Plaintiff's request for statutory damages under both acts is not an impermissible double recovery" Relying on the Ninth Circuit's decision in <u>Nintendo of America, Inc. v. Dragon Pacific Int'l</u>, 40 F.3d 1007, 1011 (9th Cir.1994), the Court stated "Defendants did not commit only one wrongful act. Had Defendants sold Plaintiff's computer programs without representing that they were Microsoft products, Defendants would have committed only copyright infringement. If Defendants have represented that the computer programs were Microsoft's, when in fact they were not, then Defendants violated the Lanham Act. While there was one act, there were two wrongs." <u>Microsoft Corp. v. Tierra Computer, Inc.</u>, 184 F. Supp. 2d at 1331.

The facts and circumstances of the instant case mirror those in <u>Tierra Computer</u>. Defendants held themselves out as authorized distributors for Plaintiffs' content by using the ABS-CBN Marks to promote and advertise the pirated content. "Insofar as the Lanham Act and Copyright Act provide separate remedies for distinct injuries, [Plaintiff] may seek damages under each act." <u>Id.</u> (citing <u>Compusource Distributors</u>, 115 F. Supp. 2d at 811. See also <u>Nintendo of America, Inc. v. Dragon Pacific Int'l</u>, 40 F.3d 1007, 1011 (9th Cir. 1994) aff'd, 51 F.3d 281 (9th Cir.1995) (a defendant commits "two wrongs" when his actions violate both the Copyright Act and the Lanham Act; to "effectuate the purposes of both statutes, damages may be awarded under both")). <u>Microsoft Corp. v. Nop</u>, 549 F. Supp. 2d 1233, 1238 -1239 (E.D. Cal. 2008) <u>citing Nintendo of America, Inc. v. Dragon Pacific Int'l</u>, 40 F.3d 1007, 1011 (9th Cir.1994). <u>See also</u>, <u>Do It Best Corp. v. Passport Software, Inc.</u>, 2004 WL 1660814, 16 (N.D. Ill. 2004) ("The Copyright Act does not preempt the Lanham Act, or vice versa, and therefore a party may recover under both statutes.") Not only had the Defendants infringed on ABS-CBNs's copyrights, but the Defendants have also negatively impacted and confused consumers' view of ABS-CBN's distribution services by using their trademarks for subpar distribution services.

"Trademark and copyright injuries are quite distinct." <u>Sparaco v. Lawler, Matusky, Skelly Engineers, LLP</u>, 313 F.Supp.2d 247, 255 (S.D. N.Y. 2004). The Copyright Act prohibits copying of a protected work solely for the benefit of the right holder. "The Lanham Act prohibits

someone from trading on the good name and reputation that another has built in a recognizable symbol" for the benefit of both the right holder and the consuming public. <u>Sparaco v. Lawler, Matusky, Skelly Engineers, LLP</u>, 313 F. Supp. 2d 247, 255 (S.D.N.Y. 2004). Statutory damages for trademark infringement and copyright infringement are intended to be both compensatory and punitive. <u>See</u> <u>Senate Section-by-Section Analysis, Cong. Rec.</u> S12084 (Aug. 9, 1995), reprinted in 50 PTCJ 425 (Aug. 17, 1995) ("The option to select statutory damages in counterfeit cases ensures that trademark owners are adequately compensated and that counterfeiters are justly punished."); <u>Louis Vuitton Malletier and Oakley, Inc. v. Veit</u>, 211 F. Supp. 2d 567, 583-84 (E.D. Pa. 2002). Thus, an award of statutory damages under the Lanham Act and the Copyright Act is similar to separate awards of punitive damages. "Such awards are not duplicative per se." <u>Mason v. Oklahoma Turnpike Authorit</u>y, 115 F.3d 1442, 1460 (10th Cir. 1997).

Statutory damages also serve non-compensatory purposes, as the Defendants committed two separate acts, and caused two distinct injuries, an award of separate statutory damages for trademark and copyright infringement would be suitable.[14] It is both fair and appropriate to enter an award of statutory damages under both the Lanham Act and the Copyright Act. This Court and others in this district have previously entered such a judgment entering an award of statutory damages under both the Lanham Act and the Copyright Act. <u>See</u> <u>ABS-CBN Corporation v. Movieonline.io</u>, Case No. 17-cv-61803-BB (S.D. Fla. Nov. 29, 2017, entered on docket Nov. 30, 2017); <u>ABS-CBN Corporation v. Pinoy-ako.info</u>, Case No. 14-cv-61613-BB (S.D. Fla. Feb. 12, 2015); <u>ABS-CBN Corporation v. Cinesilip.net</u>, Case No. 17-cv-60650-RNS (same) (S.D. Fla. Jul. 10, 2017, entered on docket Jul. 11, 2017); <u>ABS-CBN Corporation v. Dramacool.com</u>, Case No. 15-cv-62651-JIC (S.D. Fla. June 9, 2016); <u>ABS-CBN Corporation v. Hapitvnow.info</u>, Case No. 15-cv-61660-KMW (S.D. Fla. Jan. 27, 2016); <u>Gaffigan v. Does 1-10</u>, Case No. 09-cv-61206-JAL, (S.D. Fla. Sept. 17, 2010).

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs, ABS-CBN Corporation, ABS-CBN Film Productions, Inc. d/b/a Star Cinema, and ABS-CBN International, respectfully request the Court enter final default judgment and a permanent injunction against Defendants in the form of the proposed Final Default Judgment and Permanent Injunction filed herewith.

---

[14] <u>See</u> <u>Lifted Research Grp., Inc. v. Behdad, Inc.</u>, Case No. 1:08-cv-0390-CKK (D.D.C Jun. 30, 2010)

Dated: December 21, 2017

Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: s:/**Christine Ann Daley**/_____
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
Christine Ann Daley (Fla. Bar. No. 98482)
T. Raquel Wiborg-Rodriguez (Fla. Bar No. 103372)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
Facsimile: (954) 767-4821
E-mail: Stephen@smgpa.net
E-mail: Leo@smgpa.net
E-mail: Christine@smgpa.net
E-mail: Raquel@smgpa.net

Attorneys for Plaintiffs

**SCHEDULE "A"**
**DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME**

| Def. No. | Subject Domain Name |
|---|---|
| 1 | abscbn-teleserye.com |
| 2 | astigvideos.com |
| 3 | cinepinoy.lol |
| 3 | cinepinoy.ag |
| 3 | pinoyflix.ag |
| 3 | pinoyflix.lol |
| 4 | cinezen.me |
| 5 | dramascools.com |
| 6 | dramasget.com |
| 8 | frugalpinoytv.org |
| 9 | lambingan.cn |
| 10 | pinoylambingan.ph |
| 10 | lambingan.io |
| 11 | lambingans.net |
| 12 | latestpinoymovies.com |
| 13 | pinasnews.net |
| 14 | pinastvreplay.com |
| 15 | pinoybay.ch |
| 16 | pinoychannel.me |
| 17 | pinoydailyshows.com |
| 18 | pinoyplayback.net |
| 19 | pinoytvshows.net |
| 19 | pinoytv-shows.net |
| 20 | rondownload.net |
| 21 | sarapmanood.com |
| 22 | tambayanshow.net |
| 23 | thelambingan.com |
| 24 | tvnijuan.org |
| 25 | tvtambayan.org |
| 26 | vianowpe.com |
| 27 | weeklywarning.org |
| 27 | weeklywarning.com |

**SCHEDULE "B"**
**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, ADVERTISING ACCOUNT**
**INFORMATION, AND ASSOCIATED E-MAIL ADDRESSES**

| Def. No. | Subject Domain Name | Advertising Service/Platform | Account Identifier | Associated E-mail Address(es) |
|---|---|---|---|---|
| 1 | abscbn-teleserye.com | Google AdSense Google, Inc. | ca-pub-8363670849262616 | 06zqahjcbmzc@contactprivacy.email |
| 2 | astigvideos.com | Google AdSense Google, Inc. | ca-pub-8363670849262616 | nnfnbbvqo6vh@contactprivacy.email |
| 3 | cinepinoy.lol | N/A | N/A | contact@privacyprotect.org |
| 3 | cinepinoy.ag | N/A | N/A | contact@domainprivacyprotect.info |
| 3 | pinoyflix.ag | N/A | N/A | contact@privacyprotect.org |
| 3 | pinoyflix.lol | N/A | N/A | 4a3ad9e50259ad26820080a38af7651a-2628172@contact.gandi.net |
| 4 | cinezen.me | adskeeper.co.uk, Hardware Solution Limited | cinezen.me.122875 | 4a3ad9e50259ad26820080a38af7651a-2628172@contact.gandi.net |
| 4 | cinezen.me | popads.net, Tomksoft S.A. | N/A | 4a3ad9e50259ad26820080a38af7651a-2628172@contact.gandi.net |
| 5 | dramascools.com | Google AdSense Google, Inc. | ca-pub-2367658883843972 | payments@pakihosting.com |
| 6 | dramasget.com | revcontent.com, Revcontent, LLC | N/A | dramasget.com@domainsbyproxy.com |
| 8 | frugalpinoytv.org | popads.net, Tomksoft S.A. | var pmauid = '32157'; var pmawid = '30857'; | thefrugalpinoytv@gmail.com |
| 9 | lambingan.cn | h12-media.com, H12 UK LTD | N/A | admin@nicenic.net |

23

| Def. No. | Subject Domain Name | Advertising Service/Platform | Account Identifier | Associated E-mail Address(es) |
|---|---|---|---|---|
| 10 | lambingan.io | adskeeper.co.uk, Hardware Solution Limited | lambingan.io.123723 | N/A |
| 10 | lambingan.io | popads.net, Tomksoft S.A. | N/A | N/A |
| 10 | pinoylambingan.ph | Redirects to lambingan.io | N/A | dol...@... |
| 11 | lambingans.net | Google AdSense Google, Inc. | ca-pub-1865856426290995 | usaking73@gmail.com |
| 12 | latestpinoymovies.com | Google AdSense Google, Inc. | ca-pub-6712270727944137 | 86bc3894580e4338b4ef958efee7669a.protect@whoisguard.com |
| 13 | pinasnews.net | popads.net, Tomksoft S.A. | N/A | contact@privacyprotect.org |
| 14 | pinastvreplay.com | popads.net, Tomksoft S.A. | N/A | contact@privacyprotect.org |
| 15 | pinoybay.ch | N/A | N/A | N/A |
| 16 | pinoychannel.me | revcontent.com, Revcontent, LLC | N/A | sakhani@live.com |
| 17 | pinoydailyshows.com | Google AdSense Google, Inc. | ca-pub-6409372530626142 | rajaraveendrareddy.peram@gmail.com |
| 18 | pinoyplayback.net | Google AdSense Google, Inc. | ca-pub-1714538266441049 | contact@privacyprotect.org |
| 19 | pinoytvshows.net | Redirects to pinoytv-shows.net | N/A | fahimtaunsvi@gmail.com |
| 19 | pinoytv-shows.net | Google AdSense Google, Inc. | ca-pub-1677375562727935 | herpalasif@gmail.com |
| 20 | rondownload.net | bidvertiser.com, Bpath, LTD. | pid=413907&bid=1500012 | D6A727F1133F4661B96CB83A5B2C9F20.PROTECT@WHOISGUARD.COM |
| 21 | sarapmanood.com | Google AdSense Google, Inc. | ca-pub-3102114826829472 | e14fcd7e4f2543eaac7ebebaf643d10e.protect@whoisguard.com |

| Def. No. | Subject Domain Name | Advertising Service/Platform | Account Identifier | Associated E-mail Address(es) |
|---|---|---|---|---|
| 22 | tambayanshow.net | adnow.com, Adnow LLP | 340913 | contact@privacyprotect.org |
| 22 | tambayanshow.net | popads.net, Tomksoft S.A. | N/A | contact@privacyprotect.org |
| 23 | thelambingan.com | mgid.com, MGID Inc. MGID UA | N/A | apnapakforum@gmail.com |
| 24 | tvnijuan.org | mgid.com, MGID Inc. MGID UA | N/A | fastchannels@gmail.com |
| 25 | tvtambayan.org | mgid.com, MGID Inc. MGID UA | N/A | tvtambayan.org@domainsbyproxy.com |
| 26 | vianowpe.com | Google AdSense Google, Inc. | ca-pub-7075767950562858 | johnweston772@gmail.com |
| 27 | weeklywarning.org | Redirects to weeklywarning.com | N/A | shankarr1555@gmail.com |
| 27 | weeklywarning.com | popads.net, Tomksoft S.A. | N/A | ultimategangster1993@gmail.com |

**SCHEDULE C**
**COPYRIGHT DAMAGES REQUESTED**

| Def. No. | Subject Domain Name | Works Infringed | Total Damages Requested |
|---|---|---|---|
| 3 | cinepinoy.lol | Dukot,<br>ECF No. [1-5] at pp. 11-15;<br>PA 1-997-530, ECF No. [1-3] at p. 4. | $30,000.00 |
| 4 | cinezen.me | Beauty and the Bestie<br>ECF No. [1-5] at pp. 16-21;<br>PA 1-997-536, ECF No. [1-3] at p. 3. | $30,000.00 |
| 14 | pinastvreplay.com | The Achy Breaky Hearts,<br>ECF No. [1-5] at pp. 64-67;<br>PA 1-997-529, ECF No. [1-3] at p. 2. | $30,000.00 |

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 21, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that a true copy of the foregoing was served this 21st day of December, 2017, upon the Defendants by via electronic mail and via publication by publishing a true and accurate copy of the following document(s) on Plaintiffs' serving notice website, http://servingnotice.com/BW4G44W/index.html.

By: _____s:/*Christine Ann Daley*/_____

Christine Ann Daley