## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-61051-CIV-ALTONAGA/Goodman

**ABS-CBN CORPORATION,** *et al.*,

     Plaintiffs,

v.

**ABSCBN-TELESERYE.COM**, *et al.*,

     Defendants.

_____/

### <u>ORDER</u>

**THIS CAUSE** came before the Court on Plaintiffs, ABS-CBN Corporation; ABS-CBN Film Productions, Inc. d/b/a Star Cinema; and ABS-CBN International's Motion for Final Default Judgment [ECF No. 39], filed December 21, 2017.  Plaintiffs seek entry of a default final judgment pursuant to Federal Rule of Civil Procedure 55(b) against Defendants, the Individuals, Partnerships, and Unincorporated Associations identified on Schedule A that operate websites that promote and perform pirated content using infringements of Plaintiffs' trademarks.  (*See generally id.*).  Plaintiffs request the Court: (1) enjoin Defendants from offering services that infringe their trademarks; (2) enjoin Defendants from infringing their copyrighted content; (3) disable, or at Plaintiffs' election, transfer the domain names at issue to Plaintiffs; and (4) award statutory damages.  (*See generally id.*).

A Clerk's Default [ECF No. 36] was entered against Defendants on September 22, 2017, after Defendants failed to respond to the Complaint [ECF No. 1], despite having been served. (*See* Proofs of Service [ECF Nos. 33 & 34]).  The Court has carefully considered the Motion, the record, and applicable law.

## I.    BACKGROUND[1]

### A.  Factual Background

Plaintiff ABS-CBN International is the registered owner of the following trademarks registered on the Principal Register of the United States Patent and Trademark Office (collectively, the "ABS-CBN Registered Marks"):

| Trademark | Registration Number | Registration Date | Class/Services |
|---|---|---|---|
| ABS-CBN | 2,334,131 | March 28, 2000 | IC 036 – telephone calling card services<br><br>IC 038 – Television broadcasting services via satellite and cable |
| TFC | 3,733,072 | Jan. 5, 2010 | IC 038 – Television broadcasting services via satellite and cable<br><br>IC 041 – Production and programming of television shows, entertainment and a variety of programming distributed over television, satellite and via a global computer network |

(*See* Decl. of Elisha J. Lawrence [ECF No. 6-1] ¶ 5).  The ABS-CBN Registered Marks are used in connection with the creation and distribution of quality entertainment content in the categories identified above.  (*See id.*)

Plaintiff ABS-CBN International is also the owner of all rights in and to the following common law trademark (the "ABS-CBN Common Law Mark"):

| Trademark |
|---|
|  |

---

[1] The factual background is taken from the Complaint, the Motion, and supporting Declarations submitted by Plaintiffs.



(*See* Lawrence Decl. ¶ 6). The ABS-CBN Common Law Mark is used in connection with the creation and distribution of quality entertainment content. (*See id.* ¶¶ 6–7). Together, the ABS-CBN Registered Marks and the ABS-CBN Common Law Mark are referred to as the "ABS-CBN Marks." (*See id.* ¶ 6). Plaintiffs share exclusive rights in and to the ABS-CBN Marks. (*See id.*). Moreover, Plaintiffs are all licensed to use and enforce the ABS-CBN Marks. (*See id.*)

Plaintiff ABS-CBN Film Productions, Inc. is the owner of the registered copyrights in and to the movies specifically identified in the attachment labeled Exhibit 2 to the Complaint[2] [ECF No. 1-3]. Moreover, Plaintiff ABS-CBN Corporation is the owner of many unregistered copyrights, including but not limited to those specifically identified in paragraph 26 of the Complaint and in Exhibit 4 thereto [ECF No. 1-5]. (*See* Lawrence Decl. ¶ 4.) Collectively, these registered and unregistered copyrighted works are referred to herein as the "Copyrighted Works." (*See id.*). ABS-CBN Corporation, ABS-CBN Film Productions, and ABS-CBN International all share exclusive rights in and to the Copyrighted Works. (*See id.*)

As part of its ongoing investigation regarding the infringement of its intellectual property, on behalf of Plaintiffs, Stephen M. Gaffigan, P.A. performed an investigation into the advertising accounts used by Defendants. (*See* Decl. of Christine Ann Daley [ECF No. 6-2] ¶¶ 2–5.). By inspecting the Hyper Text Markup Language ("html") Source Code for the Internet websites operating under the Subject Domain Names, Stephen M. Gaffigan, P.A. was able to specifically locate and identify many of the advertising revenue accounts of the Defendants, which are identified on Schedule "B," along with Defendants' associated e-mail addresses as identified in

---

[2] While this Exhibit is labeled Exhibit 2 to the Complaint, it is the third attachment to the Complaint. Exhibit 3 to the Complaint is the fourth attachment; Exhibit 4 to the Complaint is the fifth attachment; Exhibit 5 to the Complaint is the sixth attachment.

the publicly available domain name registration data for Defendants.  (*See* Daley Decl. ¶¶ 3, 5 & n.3; *see also* Ex. 2[3] [ECF No. 6-4] and Composite Ex. 3 [ECF No. 6-5]).Plaintiffs' representative, Elisha J. Lawrence, reviewed and visually inspected Defendants' websites, including the web page captures reflecting Plaintiffs' Copyrighted Works being distributed and performed using infringements of the ABS-CBN Marks via Defendants' websites operating under the fully accessible Internet websites operating under various domain names[4] (the "Subject Domain Names"), and determined the distribution services offered were non-genuine, unauthorized distribution services of pirated copies of Plaintiffs' Copyrighted Works.  (*See* Lawrence Decl. ¶¶ 13–15).  Based on their investigation, Plaintiffs allege Defendants have advertised, promoted, distributed, and performed ABS-CBN's copyrighted works for instant streaming and used ABS-CBN's trademarks without authorization within this district through various Internet websites operating under their individual, partnership, and/or unincorporated association names without authorization, and have profited from such use via advertising services within their websites.  (*See id.*; *see also* Compl., Exs. 3 and 4 [ECF Nos. 1-4 & 1-5]; Daley Decl., Ex. 1 [ECF No. 6-3], Daley Decl., Ex. 3 [ECF No. 6-5]; Decl. of Christine Ann Daley in Supp. of Pls.' Suppl. Br. ("Suppl. Daley Decl.") [ECF No. 16-2], Suppl. Daley Decl., Composite Ex. 2 [ECF No. 16-4], and Suppl. Daley Decl., Ex. 4 [ECF No. 16-6]).  Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the ABS-CBN Marks or distribute or perform the ABS-

---

[3] Exhibits to the Daley Declaration are labeled beginning Exhibit 1, which is the third attachment to the Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction and Order Restraining Transfer of Assets [ECF No. 6].

[4] The complete list of websites, attached as Schedule A to the Motion, includes 32 domain names.

CBN Copyrighted Works. (*See* Lawrence Decl. ¶¶ 13–15; *see also* Decl. of Elisha J. Lawrence in Supp. of Pls.' Suppl. Br. ("Suppl. Lawrence Decl.") [ECF No. 16-1] ¶¶ 5–6).

### B. Procedural Background

On May 26, 2017, Plaintiffs filed their Complaint against Defendants.  On May 30, 2017, Plaintiffs filed their *Ex Parte* Application for Temporary Restraining Order, Preliminary Injunction, and Order Restraining Transfer of Assets.  On June 19, 2017, Plaintiffs filed their Supplemental Brief to Add Domains to Plaintiffs' Application for Preliminary Injunction [ECF No. 16].  On June 2, 2017, the Court granted the Application for Temporary Restraining Order, entered on June 5, 2017 (*see* Order [ECF No. 9]), which the Court subsequently converted into a Preliminary Injunction [ECF No. 20] June 22, 2017.

On August 9, 2017, Plaintiffs filed their Motion for Order Authorizing Alternate Service of Process [ECF No. 23].  On August 10, 2017, the Court entered an Order [ECF No. 24], granting the Motion for Alternate Service.  In accordance with the August 9, 2017 Order, Plaintiffs served each Defendant with a Summons and copy of the Complaint via electronic mail and publication on August 17, 2017.  (*See* Decl. of Christine Ann Daley in Supp. of Pls.' Mot. for Entry of Final J. ("Final J. Daley Decl.") [ECF No. 39-1] ¶ 6).  Plaintiffs filed the Proofs of Service as to Defendants on September 21, 2017.  (*See* Proofs of Service).

Defendants failed to file an answer or other response, and the time allowed for Defendants to respond to the Complaint has expired.  (*See* Final J. Daley Decl. ¶ 7).  To Plaintiffs' knowledge, Defendants are not infants or incompetent persons, and the Servicemembers Civil Relief Act does not apply.  (*See id.* ¶¶ 9–10).  On September 21 2017, Plaintiffs filed their Request for Clerk's Entry of Default [ECF No. 35].  After a Clerk's Default

was entered on September 22, 2017, Plaintiffs filed their Notice of Joint Liability [ECF No. 38], and now move for default final judgment against Defendants. (*See generally* Mot.).

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. *See* FED. R. CIV. P. 55(b)(2). The entry of default constitutes an admission by a defendant of the well-pleaded allegations in the Complaint. *See Cancienne v. Drain Master of S. Fla., Inc.*, No. 08-61123-CIV, 2008 WL 5111264, at *1 (S.D. Fla. Dec. 3, 2008) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005)). But a defendant's default "does not in itself warrant . . . entering a default judgment." *Goldman v. HSBC Bank USA, Nat'l Ass'n*, No. 13-81271-CIV, 2015 WL 1782241, at *1 (S.D. Fla Mar. 24, 2015) (alteration in original; internal quotation marks omitted) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Because a defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the Court must first determine whether there is a sufficient basis in the pleading for judgment to be entered. *See id.*; *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("[L]iability is well-pled in the complaint, and is therefore established by the entry of default . . . ." (alterations added; citation omitted)).

## III.     ANALYSIS

### A.  Claims

Plaintiffs seek a default judgment for the relief sought in the Complaint, asserting the following claims against Defendants: (1) trademark counterfeiting and infringement under section 32 of the Lanham Act, 15 U.S.C. section 1051 *et seq.*, in violation of 15 U.S.C. section 1114 ("Claim 1"); (2) false designation of origin under section 43(a) of the Lanham Act, in violation of 15 U.S.C. section 1125(a) ("Claim 2"); (3) cybersquatting under 15 U.S.C. section

1125(d) ("Claim 3"); (4) unfair competition under Florida common law ("Claim 4"); (5) trademark infringement under Florida common law ("Claim 5"); (6) direct infringement of copyright ("Claim 6") under and (7) contributory infringement of copyright ("Claim 7") was under the Copyright Act, 17 U.S.C. section 106. (*See* Compl. ¶¶ 46–123).

### 1.     Counterfeiting and Infringement

Section 32 of the Lanham Act, 15 U.S.C. section 1114, provides liability for trademark infringement if, without the consent of the registrant, a defendant uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark . . . which . . . is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a) (alterations added).   To prevail on its trademark infringement claim, Plaintiffs must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the defendant had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."  *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (footnote call number and citations omitted).

### 2.     False Designation of Origin

The test for liability for false designation of origin under 15 U.S.C. section 1125(a) is the same as for a trademark counterfeiting and infringement claim — *i.e.*, whether the public is likely to be deceived or confused by the similarity of the marks at issue.  *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780 (1992) (Stevens, J., concurring in the judgment).

### 3.     Cybersquatting

The Anticybersquatting Consumer Protection Act ("ACPA") protects the owner of a distinctive or famous trademark from another's bad faith intent to profit from the trademark owner's mark by registering or using a domain name which is identical or confusingly similar to,

or dilutive of, the trademark owner's mark without regard to the goods or services of the parties. *See* 15 U.S.C. section 1125(d). "To prevail under the ACPA, a plaintiff must prove that (1) its mark is distinctive or famous and entitled to protection; (2) the defendant's domain name is identical or confusingly similar to the plaintiff's mark; and (3) the defendant registered or used the domain name with a bad faith intent to profit." *Bavaro Palace, S.A. v. Vacation Tours, Inc.*, 203 F. App'x 252, 256 (11th Cir. 2006) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

4.      Common Law Unfair Competition

Whether a defendant's use of a plaintiff's trademarks created a likelihood of confusion between the plaintiff's and the defendant's products is also the determining factor in the analysis of unfair competition under the common law of Florida. *See Rolex Watch U.S.A., Inc. v. Forrester*, No. 83-8381-CIV, 1986 WL 15668, at *3 (S.D. Fla. Dec. 9, 1986).

5.      Common Law Trademark Infringement

The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act. *See PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1217–18 (S.D. Fla. 2004).

6.      Direct Infringement of Copyright

To prevail on a claim of direct infringement of copyright pursuant to the Copyright Act, 17 U.S.C. section 106, Plaintiffs must "satisfy two requirements to present a prima facie case of direct [copyright] infringement: (1) they must show ownership of the allegedly infringed material and (2) they must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. [section] 106." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) (alterations added). *See also Disney Enters. v. Hotfile*

*Corp.*, Case No. 11-20427-CIV-Williams, 2013 U.S. Dist. LEXIS 172339, at *94 (S.D. Fla. 2013).

       7.      Contributory Infringement of Copyright

To establish a cause of action for secondary (contributory) infringement of copyright, a plaintiff must establish: (1) direct infringement; (2) that defendant had knowledge of the direct infringement; and (3) that defendant intentionally induced, encouraged or materially contributed to the direct infringement.  *See Tiffany (NJ), LLC v. Liu Dongping*, No. 10-61214-CIV, 2010 WL 4450451, at *5 n.1 (S.D. Fla. Oct. 29, 2010) (citations omitted).

## B.  Liability

The well-pleaded factual allegations of Plaintiffs' Complaint properly contain the elements for each of the above claims and are admitted by virtue of Defendants' defaults.  (*See* Compl. ¶¶ 3–5, 36–73, 78–79, 86–89, 94–95, 99–101, 104–108, 116–123).  Moreover, the Complaint's factual allegations have been substantiated by sworn declarations and other evidence and establish Defendants' liability for each of the claims asserted.  Accordingly, default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure is appropriately entered against Defendants.

## C.  Relief

Plaintiffs request an award of equitable relief and monetary damages against all Defendants for trademark infringement in Claim 1.  (*See* Compl. 32–35).  Additionally, Plaintiffs request an award of equitable relief and monetary damages against only Defendant Number 1 for cybersquatting in Claim 3.  (*See id*. ¶¶ 99–108).  Finally, Plaintiffs request an award of equitable relief and monetary damages against Defendant Number 3, Defendant Number 4, and Defendant Number 14 for direct infringement of copyright.  (*See id*. ¶¶ 119–30).  The Court analyzes

Plaintiffs' requests for relief as to Claim 1, Claim 3, and Claim 6 only, as the judgment for Claims 2, 4, and 5 — false designation of origin, common law unfair competition, and common law trademark infringement — is limited to entry of the requested equitable relief for Claim 1. (*See generally* Mot.).

<u>*Injunctive Relief.*</u>   Pursuant to the Lanham Act, a district court is authorized to issue an injunction "according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of trademark law.  15 U.S.C. § 1116(a).  Indeed, "[i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1509–10 (S.D. Fla. 1995) (alteration in original; internal quotation marks omitted) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)).   Injunctive relief is available even in the default judgment setting, *see*, *e.g.*, *PetMed Express*, 336 F. Supp. 2d at 1222–23, since Defendants' failure to respond or otherwise appear makes it difficult for Plaintiffs to prevent further infringement absent an injunction, *see Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) ("[D]efendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease. Therefore, plaintiff is entitled to permanent injunctive relief." (alteration added)).

Permanent injunctive relief is appropriate where a plaintiff demonstrates: (1) it has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) an issuance of an injunction is in the public's interest.  *See eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391–92 (2006).  Plaintiffs have carried their burden on each of the four factors.

Specifically, in trademark cases, "a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . a substantial threat of irreparable harm." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imps., Inc.*, 756 F.2d 1525, 1530 (11th Cir. 1985) (alterations added; footnote call number omitted); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 986 (11th Cir. 1995) ("There is no doubt that the continued sale of thousands of pairs of counterfeit jeans would damage [the plaintiff's] business reputation and decrease its legitimate sales." (alteration added)).  Plaintiffs' Complaint alleges, and the submissions show, the illegal services advertised and offered by Defendants are nearly identical to Plaintiffs' genuine services, and consumers viewing Defendants' counterfeit services would actually confuse them for Plaintiffs' genuine services. (*See* Compl. ¶ 54 ("The net effect of Defendants' actions will cause confusion of consumers . . . who will believe Defendants' websites are legitimate, authorized distributors of ABS-CBN's Copyrighted Works or are authorized and/or approved by ABS-CBN." (alteration added))).

Plaintiffs have no adequate remedy at law so long as Defendants continue to operate the Subject Domain Names because Plaintiffs cannot control the quality of what appears to be their services in the marketplace.  (*See id.* ¶¶ 86, 87, 112, 117).  An award of monetary damages alone will not cure the injury to Plaintiffs' reputation and goodwill if Defendants' infringing and counterfeiting actions are allowed to continue.  Moreover, Plaintiffs face hardship from loss of sales and their inability to control their reputation in the marketplace.  By contrast, Defendants face no hardship if they are prohibited from the infringement of Plaintiffs' trademarks and copyrighted content.  Finally, the public interest supports the issuance of a permanent injunction against Defendants to prevent consumers from being misled by Defendants' services, and potentially harmed by their inferior quality.  *See Nike, Inc. v. Leslie*, No. 85-960-CIV-T-15, 1985

WL 5251, at *1 (M.D. Fla. June 24, 1985) ("[A]n injunction to enjoin infringing behavior serves the public interest in protecting consumers from such behavior." (alteration added)); *see also World Wrestling Entm't, Inc. v. Thomas*, No. 12-21018-CIV, 2012 WL 12874190, at *8 (S.D. Fla. Apr. 11, 2012) (considering the potential for harm based on exposure to potentially hazardous counterfeit merchandise in analyzing public's interest in an injunction). Further, the public interest supports the issuance of a permanent injunction because Plaintiffs lose valuable incentives to continue to create programming if they continue to be deprived of (1) control over their copyrighted content, (2) how and where the copyrighted content gets distributed, including Internet retransmissions through negotiated licenses and their portals, and (3) potential revenue sources. Protecting Plaintiffs' rights is consistent with promoting the public interest. *See Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010); *CBS Broad., Inc. v. EchoStar Communs. Corp.*, 265 F.3d 1193, 1198 (11th Cir. 2001) ("the public interest lies with protecting the rights of copyright owners"); *C.B. Fleet Co. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1084 (S.D. Fla. 2007) ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works.")

The Court's broad equity powers allow it to fashion injunctive relief necessary to stop Defendants' infringing activities. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971) ("Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for . . . . [t]he essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould [sic] each decree to the necessities of the particular case." (alterations added; citation and internal quotation marks omitted)); *United States v. Bausch & Lomb Optical Co.*, 321 U.S. 707, 724 (1944) ("Equity has power to eradicate the evils of a condemned scheme by prohibition of the use of admittedly valid parts of an invalid

whole." (citations omitted)).   District courts are expressly authorized to order the transfer or surrender of domain names in an *in rem* action against a domain name.   *See* 15 U.S.C. §§1125(d)(1)(C), (d)(2).   Yet, courts have not limited the remedy to that context.   *See, e.g.*, *Philip Morris USA v. Otamedia Ltd.*, 331 F. Supp. 2d 228, 230 & n.2 (S.D.N.Y. 2004) (transferring Yesmoke.com domain name to plaintiff despite the fact that plaintiff did not own a trademark in the term "Yesmoke" and noting that 15 U.S.C. section 1125 "neither states nor implies that an *in rem* action against the domain name constitutes the exclusive remedy for a plaintiff aggrieved by trademark violations in cyberspace"); *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (ordering the defendants to disclose all other domain registrations held by them and to transfer registration of a particular domain name to plaintiff in part under authority of 15 U.S.C. section 1116(a)).

Defendants have created an Internet-based counterfeiting and infringing scheme in which they are profiting from their deliberate misappropriation of Plaintiffs' rights.   Accordingly, the Court may fashion injunctive relief to eliminate the means by which Defendants are conducting their unlawful activities.   Ordering the cancellation or transfer of the Subject Domain Names to Plaintiffs, where they may be disabled from further use as platforms for the infringement of Plaintiffs' intellectual property rights, is appropriate to achieve this end.   Many courts have not hesitated to order the transfer of domain names when faced with factual scenarios like this one.[5]

---

[5] *See e.g., Chanel, Inc. v. 4sreplicachanel.com*, No. 17-cv-61838-CMA (S.D. Fla. Nov. 9, 2017), Final Default Judgment and Permanent Injunction [ECF No. 34] (awarding transfer of domain name at issue as part of grants of permanent injunction); *Tiffany (NJ) LLC v. tiffanyloveyou.com*, No. 17-cv-60594-CMA (S.D. Fla. June 8, 2017), Final Default Judgment and Permanent Injunction [ECF No. 33] (same).   *See also Under Armour, Inc. v. 51nfljersey.com*, No. 13-62809-CIV, 2014 WL 1652044 (S.D. Fla. Apr. 23, 2014), Final Default Judgment and Permanent Injunction [ECF No. 38] (same); *Chanel, Inc. v. 7perfecthandbags.com*, No. 12-22057-CIV, 2014 WL 352197 (S.D. Fla. Jan. 31, 2014), Order Granting Plaintiff's Fourth Motion for Entry of Final Default Judgment [ECF No. 211] (same); *ABS-CBN Corporation v. Movieonline.io*, No. 17-cv-61803-BB (S.D. Fla. Nov. 29, 2017, entered on docket Nov. 30, 2017), Final Default Judgment and Permanent Injunction [ECF No. 46] (same).

*Statutory Damages.* In a case involving the use of counterfeit marks in connection with the sale, offering for sale, or distribution of goods, 15 U.S.C. section 1117(c) provides that a plaintiff may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $1,000.00 nor more than $200,000.00 per counterfeit mark per type of good.  *See* 15 U.S.C. section 1117(c)(1).  In addition, if the Court finds that Defendants' counterfeiting actions were willful, it may impose damages above the maximum limit up to $2,000,000.00 per mark per type of good. *See id*. § 1117(c)(2).

The Court has wide discretion to determine the amount of statutory damages.  *See PetMed Express, Inc.*, 336 F. Supp. 2d at 1219 (citations omitted).  An award of statutory damages is appropriate despite a plaintiff's inability to prove actual damages caused by a defendant's infringement.  *See Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 852 (E.D. Mich. 2006) ("[A] successful plaintiff in a trademark infringement case is entitled to recover enhanced statutory damages even where its actual damages are nominal or non-existent." (alteration added; citations omitted)); *Playboy Enters., Inc. v. Universal Tel-A-Talk*, *Inc.*, No. CIV-A-96-6961, 1998 WL 767440, at *8 (E.D. Pa. Nov. 3, 1998) (awarding statutory damages where plaintiff failed to prove actual damages or profits).  Indeed, the option of a statutory damages remedy in trademark counterfeiting cases is sensible given evidence of a defendant's profits in such cases is frequently almost impossible to ascertain.  *See, e.g.*, S. Rep. No. 104-177, pt. V § 7, at 10 (1995) (discussing purposes of Lanham Act statutory damages); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1220 (statutory damages are "[e]specially [sic] appropriate in default judgment cases due to infringer nondisclosure" (alteration added; citations omitted)).  This case is no exception.

Here, the allegations of the Complaint and the evidence establish Defendants intentionally copied one or more of the ABS-CBN Marks for the purpose of deriving the benefit

of Plaintiffs' world-famous reputation. Defendants have defaulted on Plaintiffs' allegations of willfulness. (*See* Compl. ¶ 61; *see also Arista Records, Inc. v. Beker Enters., Inc.*, 298 F. Supp. 2d 1310, 1313 (S.D. Fla. 2003) (finding a court may infer willfulness from the defendants' default) (citation omitted); *see also PetMed Express, Inc.*, 336 F. Supp. 2d at 1217 (stating that upon default, well plead allegations are taken as true)). As such, the Lanham Act permits the Court to award up to $2,000,000.00 per infringing mark on each type of good as statutory damages to ensure Defendants do not continue their intentional and willful counterfeiting activities.

The only available evidence in this case demonstrates Defendants promoted, offered, advertised, at least one (1) type of service – content distribution services – using marks which were, in fact, infringements of, at least, one of the ABS-CBN Marks protected by two federal trademark registrations. (*See* Compl. ¶¶ 39, 78–79, 86–89, 94–95, 99–101 and Schedule B annexed thereto; Lawrence Decl. ¶¶ 12–15). Based on the above considerations, Plaintiffs have asked the Court to begin with a baseline statutory minimum award of $100,000.00 per trademark infringed, treble that amount in light of Defendants' willful infringement, and again double it for purposes of deterrence. (*See* Mot. 14–16).

The Court agrees with Plaintiffs that $100,000.00, trebled for willful conduct and doubled for deterrence — thus, $600,000.00 — is a reasonable statutory baseline. *See ABS-CBN Corporation v. Pinoy-ako.info*, No. 14-cv-61613-BB (S.D. Fla. Feb. 11, 2015) [ECF No. 43] (awarding $1,200,000.00 per trademark infringed (two) per type of services offered (one), for a total award amount of $2,400,000.00); *ABS-CBN Corporation, et al. v. Phnoy.com*, No. 14-cv-61710-JIC (S.D. Fla. Dec. 16, 2014) [ECF No. 19] (awarding $1,200,000.00 per trademark infringed (four) per type of services offered (one), resulting in a total award of $4,800,000.00). Therefore,

the proper measure of damages is $600,000.00 multiplied by the number of types of services Defendants sold (one) and the number of trademarks infringed (two).   (*See* Mot. 14). Accordingly, Plaintiffs are entitled to $1,200,000.00 in statutory damages for which Defendants are jointly and severally liable.   Plaintiffs alleged in its Complaint that Defendants acted in coordination to individually and jointly cause unquantifiable damages to Plaintiffs.   (*See* Compl. ¶¶ 58–59).   The award should be sufficient to deter Defendants and others from continuing to counterfeit or otherwise infringe Plaintiffs' trademarks, compensate Plaintiffs, and punish Defendants, all stated goals of 15 U.S.C. section 1117(c).   The Court finds that this award of statutory damages is just.

Plaintiffs' Complaint also sets forth a cause of action for cybersquatting pursuant to the ACPA, 15 U.S.C. section 1125(d) against Defendant Number 1.   As admitted by the default, and established by the evidence submitted, Defendant Number 1 has acted with the bad faith intent to profit from the ABS-CBN Marks and the goodwill associated with the ABS-CBN Marks by registering the domain name "abscbn-teleserye.com," which is identical, confusingly similar to, or dilutive of the ABS-CBN Marks (the "abscbn-teleserye.com domain name").   (*See* Compl. ¶¶ 63–68, 100–105; *see also* Mot. 14).   The abscbn-teleserye.com domain name incorporates Plaintiffs' trademark "ABS-CBN," registration number 2,334,131, in its entirety surrounded by a descriptive term, rendering the domain name nearly identical to Plaintiffs' trademark.

Upon a finding of liability, the ACPA expressly empowers the Court to "order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. section 1125(d)(1)(C); *Victoria's Cyber Secret Ltd. P'ship v. Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1356 (S.D. Fla. 2001).   Accordingly, Plaintiffs are entitled to the transfer and ownership of Defendant Number 1's abscbn-teleserye.com domain

name because it is confusingly similar to Plaintiffs' ABS-CBN Mark, registration number 2,334,131.

Additionally, Plaintiffs may elect at any time before final judgment to recover actual damages or statutory damages of not less than $1,000.00 and not more than $100,000.00 per domain name, as the court considers just.  15 U.S.C. § 1117(d).  Plaintiffs have elected statutory damages and request in view of Defendant Number 1's intentional, wrongful behavior, an award in the amount of $10,000.00 for the abscbn-teleserye.com domain name.  *See Taverna Opa Trademark Corp. v. Ismail*, No. 08-20776-CIV, 2010 WL 1838384, at *3 (S.D. Fla. May 6, 2010) (awarding $10,000.00 in statutory damages for domain name at issue).  The Court finds this amount is just.

Plaintiffs' Complaint further sets forth a cause of action for direct infringement of copyright pursuant to 17 U.S.C. section 504.  Title 17, U.S.C. section 504(c) provides that a copyright owner may elect an award of statutory damages at any time before final judgment is rendered in the sum of not less than $750 or more than $30,000.00 as the court considers just.  17 U.S.C. § 504(c)(1).  In addition, if the Court finds that Defendant's copyright infringement was willful, it may impose damages above the maximum limit up to a sum of not more than $150,000.00.  *See id*.

The Court has wide discretion to set an amount of statutory damages.  *See Tiffany (NJ), LLC*, 2010 WL 4450451.  An award of statutory damages is appropriate, because statutory damages may be elected whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by the Defendant.  *See Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984).

> A rule of liability which merely takes away the profits from an infringement would offer little discouragement to infringers. It would fall short of an effective

sanction for enforcement of the copyright policy. The statutory rule, formulated after long experience, not merely compels restitution of profit and reparation for injury but also is designed to discourage wrongful conduct. The discretion of the court is wide enough to permit a resort to statutory damages for such purposes.

*F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952).

Here, the allegations in the Complaint, which are taken as true, clearly establish Defendant Number 3, cinepinoy.lol; Defendant Number 4, cinezen.me; and Defendant Number 14, pinastvreplay.com each intentionally infringed one of Plaintiffs' registered Copyrighted Works for the purpose of deriving the benefit of the value of Plaintiffs' content in order to drive viewers to their Internet websites operating under the Subject Domain Names for profit. *See* Compl. ¶¶ 104–108 and Schedule "D" annexed thereto; *see also* Ex. 2 to the Complaint; Lawrence Decl. ¶¶ 12–15. As such, the Copyright Act provides for damages in a sum of not less than $750.00 or more than $30,000.00 per work as the court considers just. 17 U.S.C. § 504(c)(1). In addition, if the Court finds that Defendants' copyright infringement was willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.00." *Id*. § 504(c)(2).

The evidence in this case demonstrates that Defendant Number 1, movieonline.io; Defendant Number 3, cinepinoy.lol; Defendant Number 4, cinezen.me; and Defendant Number 14, pinastvreplay.com each infringed one registered copyright of Plaintiffs. *See* Ex. 2 to the Compl.; Ex. 4 to the Compl. [ECF No. 1-5] at pp. 11–21; 64–67. Plaintiffs suggest the Court award the highest award per registered work for non-willful infringement, $30,000.00, despite Defendants defaulting on Plaintiffs' allegations of willfulness. (*See* Compl. ¶¶ 1, 5, 61, 109, 126). The result would be a statutory damage award of $30,000.00 against each of the above Defendants. The award is sufficient to deter Defendants and others from continuing to infringe Plaintiffs' copyrights, compensate Plaintiffs, and punish Defendants. The Court finds that this

award of statutory damages falls within the permissible statutory range under 17 U.S.C. section 504(c) and is just.

Recovering under both the Lanham Act and the Copyright Act is appropriate in the instant case. Defendants herein willfully committed two wrongs, copyright infringement and trademark infringement, and Plaintiffs have proven violations of both statutes. "A plaintiff is entitled to a separate award of statutory damages under both the Copyright Act and the Lanham Act when the defendant simultaneously infringes a copyright and trademark." *Microsoft Corp. v. Online Datalink Computer, Inc.*, No. 07cv01165, 2008 WL 1995209, at \*3 (S.D. Cal. 2008) (citing *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 (9th Cir. 1994)).[6] "This Court holds that the Plaintiff's request for statutory damages under both acts is not an impermissible double recovery." *Microsoft Corp. v. Tierra Computer, Inc.*, 184 F. Supp. 2d 1329, 1331 (N.D. Ga. 2001) (internal quotations marks omitted).

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to the entry of final default judgment. Accordingly, it is

---

[6] *See ABS-CBN Corp. v. Movieonline.io*, No. 17-cv-61803-BB (S.D. Fla. Nov. 29, 2017, entered on docket Nov. 30, 2017), Final Default Judgment and Permanent Injunction [ECF No. 46] (awarding damages under both the Copyright Act and the Lanham Act); *ABS-CBN Corp. v. Pinoy-ako.info*, No. 14-cv-61613-BB (S.D. Fla. Feb. 11, 2015, entered on docket Feb. 12, 2015), Final Default Judgment and Permanent Injunction [ECF No. 43] (same); *ABS-CBN Corp. v. Cinesilip.net*, No. 17-cv-60650-RNS (same) (S.D. Fla. Jul. 10, 2017, entered on docket Jul. 11, 2017), Final Default Judgment and Permanent Injunction [ECF No. 32] (same); *ABS-CBN Corp. v. Dramacool.com*, No. 15-cv-62651-JIC (S.D. Fla. June 8, 2016, entered on docket June 9, 2016), Final Default Judgment [ECF No. 37] (same); *ABS-CBN Corp. v. Hapitvnow.info*, No. 15-cv-61660-KMW (S.D. Fla. Jan. 27, 2016), Final Default Judgment and Permanent Injunction [ECF No. 26] (same); *Gaffigan v. Does 1-10*, No. 09-cv-61206-JAL, (S.D. Fla. Sept. 17, 2010), Final Default Judgment and Permanent Injunction [ECF No. 70] (same).

CASE NO. 17-61051-CIV-ALTONAGA/Goodman

**ORDERED AND ADJUDGED** that Plaintiffs' Motion for Final Default Judgment Against Defendants [**ECF No. 39**] is **GRANTED**. Final judgment and a permanent injunction shall be entered by separate order.

**DONE AND ORDERED** in Miami, Florida, this 27th day of December, 2017.

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

20

CASE NO. 17-61051-CIV-ALTONAGA/Goodman

## SCHEDULE "A"
## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAME

| Def. No. | Subject Domain Name |
|---|---|
| 1 | abscbn-teleserye.com |
| 2 | astigvideos.com |
| 3 | cinepinoy.lol |
| 3 | cinepinoy.ag |
| 3 | pinoyflix.ag |
| 3 | pinoyflix.lol |
| 4 | cinezen.me |
| 5 | dramascools.com |
| 6 | dramasget.com |
| 8 | frugalpinoytv.org |
| 9 | lambingan.cn |
| 10 | pinoylambingan.ph |
| 10 | lambingan.io |
| 11 | lambingans.net |
| 12 | latestpinoymovies.com |
| 13 | pinasnews.net |
| 14 | pinastvreplay.com |
| 15 | pinoybay.ch |
| 16 | pinoychannel.me |
| 17 | pinoydailyshows.com |
| 18 | pinoyplayback.net |
| 19 | pinoytvshows.net |
| 19 | pinoytv-shows.net |
| 20 | rondownload.net |
| 21 | sarapmanood.com |
| 22 | tambayanshow.net |
| 23 | thelambingan.com |
| 24 | tvnijuan.org |
| 25 | tvtambayan.org |
| 26 | vianowpe.com |
| 27 | weeklywarning.org |
| 27 | weeklywarning.com |

CASE NO. 17-61051-CIV-ALTONAGA/Goodman

SCHEDULE "B"
**DEFENDANTS BY NUMBER, SUBJECT DOMAIN NAME, ADVERTISING ACCOUNT
INFORMATION, AND ASSOCIATED E-MAIL ADDRESSES**

| Def. No. | Subject Domain Name | Advertising Service/Platform | Account Identifier | Associated E-mail Address(es) |
|---|---|---|---|---|
| 1 | abscbn-teleserye.com | Google AdSense Google, Inc. | ca-pub-8363670849262616 | 06zqahjcbmzc@contactprivacy.email |
| 2 | astigvideos.com | Google AdSense Google, Inc. | ca-pub-8363670849262616 | nnfnbbvqo6vh@contactprivacy.email |
| 3 | cinepinoy.lol | N/A | N/A | contact@privacyprotect.org |
| 3 | cinepinoy.ag | N/A | N/A | contact@domainprivacyprotect.info |
| 3 | pinoyflix.ag | N/A | N/A | contact@privacyprotect.org |
| 3 | pinoyflix.lol | N/A | N/A | 4a3ad9e50259ad26820080a38af7651a-2628172@contact.gandi.net |
| 4 | cinezen.me | adskeeper.co.uk, Hardware Solution Limited | cinezen.me.122875 | 4a3ad9e50259ad26820080a38af7651a-2628172@contact.gandi.net |
| 4 | cinezen.me | popads.net, Tomksoft S.A. | N/A | 4a3ad9e50259ad26820080a38af7651a-2628172@contact.gandi.net |
| 5 | dramascools.com | Google AdSense Google, Inc. | ca-pub-2367658883843972 | payments@pakihosting.com |
| 6 | dramasget.com | revcontent.com, Revcontent, LLC | N/A | dramasget.com@domainsbyproxy.com |
| 8 | frugalpinoytv.org | popads.net, Tomksoft S.A. | var pmauid = '32157'; var pmawid = '30857'; | thefrugalpinoytv@gmail.com |
| 9 | lambingan.cn | h12-media.com, H12 UK LTD | N/A | admin@nicenic.net |

CASE NO. 17-61051-CIV-ALTONAGA/Goodman

| Def. No. | Subject Domain Name | Advertising Service/Platform | Account Identifier | Associated E-mail Address(es) |
|---|---|---|---|---|
| 10 | lambingan.io | adskeeper.co.uk, Hardware Solution Limited | lambingan.io.123723 | N/A |
| 10 | lambingan.io | popads.net, Tomksoft S.A. | N/A | N/A |
| 10 | pinoylambingan.ph | Redirects to lambingan.io | N/A | dol...@... |
| 11 | lambingans.net | Google AdSense Google, Inc. | ca-pub-1865856426290995 | usaking73@gmail.com |
| 12 | latestpinoymovies.com | Google AdSense Google, Inc. | ca-pub-6712270727944137 | 86bc3894580e4338b4ef958efee7669a.protect@whoisguard.com |
| 13 | pinasnews.net | popads.net, Tomksoft S.A. | N/A | contact@privacyprotect.org |
| 14 | pinastvreplay.com | popads.net, Tomksoft S.A. | N/A | contact@privacyprotect.org |
| 15 | pinoybay.ch | N/A | N/A | N/A |
| 16 | pinoychannel.me | revcontent.com, Revcontent, LLC | N/A | sakhani@live.com |
| 17 | pinoydailyshows.com | Google AdSense Google, Inc. | ca-pub-6409372530626142 | rajaraveendrareddy.peram@gmail.com |
| 18 | pinoyplayback.net | Google AdSense Google, Inc. | ca-pub-1714538266441049 | contact@privacyprotect.org |
| 19 | pinoytvshows.net | Redirects to pinoytv-shows.net | N/A | fahimtaunsvi@gmail.com |
| 19 | pinoytv-shows.net | Google AdSense Google, Inc. | ca-pub-1677375562727935 | herpalasif@gmail.com |
| 20 | rondownload.net | bidvertiser.com, Bpath, LTD. | pid=413907&bid=1500012 | D6A727F1133F4661B96CB83A5B2C9F20.PROTECT@WHOISGUARD.COM |
| 21 | sarapmanood.com | Google AdSense Google, Inc. | ca-pub-3102114826829472 | e14fcd7e4f2543eaac7ebebaf643d10e.protect@whoisguard.com |

CASE NO. 17-61051-CIV-ALTONAGA/Goodman

| Def. No. | Subject Domain Name | Advertising Service/Platform | Account Identifier | Associated E-mail Address(es) |
|---|---|---|---|---|
| 22 | tambayanshow.net | adnow.com, Adnow LLP | 340913 | contact@privacyprotect.org |
| 22 | tambayanshow.net | popads.net, Tomksoft S.A. | N/A | contact@privacyprotect.org |
| 23 | thelambingan.com | mgid.com, MGID Inc. MGID UA | N/A | apnapakforum@gmail.com |
| 24 | tvnijuan.org | mgid.com, MGID Inc. MGID UA | N/A | fastchannels@gmail.com |
| 25 | tvtambayan.org | mgid.com, MGID Inc. MGID UA | N/A | tvtambayan.org@domainsbyproxy.com |
| 26 | vianowpe.com | Google AdSense Google, Inc. | ca-pub-7075767950562858 | johnweston772@gmail.com |
| 27 | weeklywarning.org | Redirects to weeklywarning.com | N/A | shankarr1555@gmail.com |
| 27 | weeklywarning.com | popads.net, Tomksoft S.A. | N/A | ultimategangster1993@gmail.com |